[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11885
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 4, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-00030-CR-1-MP-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRAIG MATTHEW FEIGIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 4, 2010)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Craig Matthew Feigin appeals his thirty-month, above-guideline sentence, imposed after he pled guilty to unauthorized access of a computer and obtaining information from a protected computer. After careful review of the record and the parties' briefs, we discern no reversible error and AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Feigin on one count of intentionally accessing a computer without authorization and obtaining information from a protected computer in furtherance of a criminal act, in violation of 18 U.S.C. § 1030(a)(2) and (c)(2)(B)(ii). R1-1. Feigin subsequently pled guilty pursuant to a written plea agreement. R1-29. In the plea agreement, Feigin indicated that he understood the statutory penalties he faced and that the court had the sole discretion to determine his sentence after consideration of the Sentencing Guidelines. Id. at 2-3. In exchange for Feigin's plea, the government "agree[d] not to recommend a specific sentence," but:

> reserve[d] the right to advise the District Court and any other authorities of its version of the circumstances surrounding the commission of the offense . . . including correcting any misstatements by defendant or defendant's attorney, and reserves the right to present evidence and make arguments pertaining to the application of the sentencing guidelines and the considerations set forth in Title 18, United States Code, Section 3553(a).

Id. at 3.

2

As part of the plea agreement, Feigin stipulated to the following facts. Feigin secretly installed several computer software programs, including one named "webcamspyhacker," on a computer belonging to an adult female, Marisol Garcia, without her knowledge. R1-29-2 at 1. These programs allowed Feigin to control the web camera on Garcia's computer remotely and to view and record her activities without her knowledge. Id. The images obtained captured Garcia and other persons in various stages of dress and undress and were stored on a computer server located in the Czech Republic. Id. at 1-2. Feigin created a website through which he advertised and sold the "webcamspyhacker" software program to other individuals. Id. at 2.

The probation officer prepared a presentence investigation report ("PSI"), in which he calculated Feigin's base offense level at six, pursuant to U.S.S.G. § 2B1.1(a)(2), and applied a two-level enhancement under § 2B1.1(b)(9) because Feigin's offense involved the relocation of a fraudulent scheme to another jurisdiction and/or sophisticated means. The probation officer increased Feigin's offense level to twelve, as required by § 2B1.1(b)(9), and applied a two-level increase under § 3B1.3 because his offense involved a special skill, namely, knowledge of computer software and hardware. After receiving a two-level decrease for acceptance of responsibility under § 3E1.1(a), Feigin had a total

adjusted offense level of twelve, which, together with a criminal history category of I, yielded a guideline range of ten to sixteen months of imprisonment. Feigin also faced a statutory maximum term of five years of imprisonment under 18 U.S.C. § 1030(a)(2) and (c)(2)(B)(ii). The probation officer noted additionally that Garcia had submitted a victim impact statement, in which she told the court that she suffered from insomnia, paranoia, and anxiety, and had issues with trust and insecurity as a result of Feigin's conduct.

At the sentencing hearing, Feigin made no objections to the PSI but requested that the court vary downward from the guideline range and sentence him to time served (three weeks) and supervised release with special conditions that would ensure he did not misuse any technology to victimize others. R4 at 2-6. Feigin personally apologized to Garcia and to the court for his actions. Id. at 6.

The government then called Garcia, who testified that she met Feigin through her sister-in-law, who lived with Feigin's girlfriend, and gave him access to her computer because he had a reputation for being very knowledgeable about computers. Id. at 7, 8-9, 15. About a month later, she noticed that the computer was "moving on its own," and took it to a friend of hers who was an information technology ("IT") specialist. Id. at 10. The IT professional explored Garcia's computer and found installed on it a program that allowed others to access the

4

computer remotely as well as motion detection software that caused the computer's web camera to automatically take pictures whenever she moved in front of her computer. Id. at 10-11. The IT professional tracked the pictures to a remote server, which contained over 10,000 pictures of her. Id. at 11. Garcia stated that she was captured nude in some of the photographs. Id. Garcia subsequently searched the internet and found that Feigin had posted a video of her with the comment: "This is my girlfriend who at the time had no idea that I was filming her. Afterwards[,] we had a big laugh about it." Id. at 11-12 (quotation marks omitted). Garcia described the video as a sales pitch, as Feigin had been promoting the software programs. Id. at 12. She stated that some people had contacted her and told her that she "deserved what [she] got; that they wanted to see the pictures; [and that] they wanted to see what the whole hype was about." Id. at 13. Garcia testified that she has always had anxiety, but that it had "kicked in . . . hard" after being victimized by Feigin. Id. at 13. She stated that she was receiving counseling and taking medication to treat her anxiety. Id. at 13.

The government's counsel then made the following statement to the court:

> I'm very concerned, sir, that as unique as it may be in the age of technology in which we live, this is not the [last] time that the Court is going to be addressing this.
>
> So I'm concerned with respect to that, the precedence of the case, itself, and how this case will be looked at in the

5

future and how the crime, itself, will be looked at in the future.

Sir, the principal concern that I have, as I go through the [PSI] and I look at the guidelines, is the fact that this case and this crime, itself, is looked at as a financial crime when in truth and in reality, it is anything but a financial crime. This is really a crime upon a person. It is an invasion of someone's privacy. And it's a crime that has an impact on a victim and the kind of impact that isn't temporary and isn't fleeting and isn't just going to go away, but [is] lasting and permanent.

This young woman has been victimized in this case and she has gotten fallout . . . from people who have seen this and solicited comments from her but that image is not capturable again. You can't recover it. This is something that happened in the privacy of her own bedroom and that privacy being violated . . . essentially happens again and again and again when she comes across these images, the videos and this setting. And I think she very clearly explained to the Court the emotional and psychological impact of the crime, itself. Sir, none of those are factors that are considered by the guidelines.

And typically — and I'm not saying this is anywhere similar — but like in a child pornography crime when images are dispatched and we know that the victims are again and again victimized because those images are out there, there is consideration in those types of cases for the impact on the child, but not in these circumstances. And that's something . . . that needs to be brought to the attention of the committee and have them address it and determine if there should in fact be some consideration of that. But, in the absence of that, sir, I ask the Court to consider that under the [section] 3553(a) guidelines.

6

Id. at 15-17.

For his part, Feigin argued that each of the multiple photographs taken of Garcia was not an independent act, pointing out that, once the software was installed, Garcia's computer automatically took pictures upon detecting motion, without any further action by him. Id. at 17. Feigin acknowledged that his actions constituted an invasion of privacy, which he agreed was a serious offense, but argued that the Sentencing Commission or Congress, not the court, should address whether the Guidelines imposed a sufficient penalty. Id. at 17-18. Feigin argued additionally that to the extent the government was advocating a specific sentence when it urged the court to "come down especially hard on [Feigin,], its statements violated the spirit, if not the letter, of the plea agreement. Id. at 18. The government responded that it was not intending to argue for a specific sentence but was merely making known to the court the relevant facts regarding the offense. Id.

The court found that the PSI was "complete, true and accurate." Id. It stated that Feigin's crime was one that "just keeps on giving," as reflected by the victim's testimony. Id. It sentenced Feigin to thirty months of imprisonment, stating that it varied from the guideline range "in consideration of all of the factors in 18 [U.S.C. §] 3553(a) and all of the policy statements." Id. at 18-19. Specifically, the court found that "the guidelines [were] not sufficient for this crime as testified" and that

7

[the thirty-month sentence] factors in the harm to Ms. Garcia. It is not a matter considered in these guidelines or the policy statements. It justifies a sentence outsider of the guidelines." Id. at 19. Feigin did not object to the sentencing proceedings or to the sentence itself. See id. at 24.

The court's judgment was entered on 10 April 2009. R1-41. The court filed a statement of reasons for the sentence it imposed, indicating that it varied upward based on extreme psychological injury under U.S.S.G. § 5K2.3, the seriousness of the crime, and the harm to the victim. R2-42 at 2-3.

## II. DISCUSSION

On appeal, Feigin argues that the government breached the plea agreement because it failed to keep its agreement that it would not recommend or oppose a particular sentence and would confine its remarks solely to the considerations specified in the guidelines. He contends that the government violated the spirit of the agreement by commenting on the sufficiency of the guidelines and the § 3553(a) factors, emphasizing factors that it acknowledged were not considered by the guidelines, disparaging him by equating him to a child pornographer, and presenting information that did not clarify events or resolve any ambiguity, as there was no issue or fact in dispute or any statement that the government needed to rebut. He posits that the government did not object to the PSI, which correctly

8

characterized his offense as a financial one, did not indicate that the guidelines were insufficient in any way, and did not recommend an upward variance. He submits that the government's comments impliedly advocated for a sentence outside of the guideline range. Feigin also argues that the government's intent and any impact that the government's statements had on the court were irrelevant, because a breach of a plea agreement requires specific performance and is not reviewed for harmless error, thus requiring that we remand the case for resentencing under a different district court judge.

"We review de novo whether the government breached a plea agreement." United States v. Thomas, 487 F.3d 1358, 1360 (11th Cir. 2007) (per curiam). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996). "[W]hether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." Id. (quotation marks and citation omitted). If the parties dispute the meaning of the agreement, we interpret the terms of the plea agreement based on objective standards, see United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992), and any ambiguity "must be read against the government,"

see United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990) (quotation marks and citation omitted).

A defendant is entitled to specific performance of an agreement which induces his guilty plea. United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992). This is true regardless of whether the government's breach had any effect on the sentencing judge. See Santobello v. New York, 404 U.S. 257, 262-63, 92 S. Ct. 495, 499 (1971) (remanding even though there was "no reason to doubt" the sentencing court's statement that the prosecutor's recommendation, made in breach of the plea agreement, did not influence its decision); United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998) (per curiam) (noting that where the government, not the sentencing court, violates a plea agreement, the court's "acts are not important to this issue"); but see Puckett v. United States, 556 U.S. ___, ___, 129 S. Ct. 1423, 1432 (2009) (stating that "breach of a plea deal is not a 'structural' error," and is thus ordinarily subject to harmless error review). The solemnization of a plea agreement does not, however, preclude the government from disclosing relevant information to the sentencing court. Boatner, 966 F.2d at 1578.

We have found that the government breached a plea agreement when the plea agreement contained express obligations and the government's affirmative

10

actions contradicted those express terms.  For example, in <u>Rewis</u>, we held that the government's statements at sentencing, which were unrelated to the underlying offense and suggested a harsh sentence, violated its express agreement not to recommend a sentence and went beyond its reserved right to make known to the court relevant facts regarding the underlying offenses.  969 F.2d at 988.  In <u>Johnson</u>, we held that the government violated a plea agreement by becoming an "enthusiastic advocate" for a "fact" at odds with a "fact" stipulated to by the defendant in the plea agreement.  132 F.3d at 631 (holding that the prosecutor breached an express term of the plea agreement by arguing at sentencing that the defendant was responsible for a quantity of drugs greater than the amount stipulated to in the plea agreement).

We have found no breach in cases where the plea agreement contains less express or specific language regarding the government's rights and obligations.  In <u>Thomas</u>, we held that the government did not breach its agreement "not to recommend a specific sentence" when it described the facts of the offenses and the sentencing options available to the district court, and argued that running the defendant's sentences consecutively would be adequate to satisfy the § 3553(a) factors.  487 F.3d at 1359-61.  In so holding, we noted the plea agreement's language reserving the government's "right to present evidence and make

arguments pertaining to the application of the sentencing guidelines and the considerations set forth in Title 18, United States Code, Section 3553(a)." Id. at 1360-61.[1]

As an initial matter, we note that, contrary to the government's assertion, Feigin did challenge the government's statements at sentencing as violating the plea agreement. See R4 at 18. We thus review this issue de novo. Thomas, 487 F.3d at 1360.

Here, the government agreed not to recommend a specific sentence, but reserved "the right to advise the District Court . . . of the circumstances surrounding the commission of the offense" and the "right to present evidence and make arguments pertaining to the application of the sentencing guidelines and the considerations set forth in Title 18, United States Code, Section 3553(a)." R1-29 at 3. At sentencing, the government never explicitly advocated for a particular sentence and its comments regarding the nature of the crime fell within the scope of its expressly reserved right to make arguments pertaining to the § 3553(a)

---

[1] The factors outlined in § 3553(a) require a court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment for the offense, to protect the public, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines' range; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

sentencing factors. Moreover, the information the government presented was not specifically precluded by the plea agreement, did not contradict stipulated facts, and was relevant to the totality of Feigin's criminal activities. Cf. Boatner, 966 F.2d at 1579 (holding that the government violated the plea agreement by endorsing information that was specifically precluded by the plea agreement). In sum, Feigin has failed to cite any promise in his plea agreement that was breached when the government added the particular facts about his offense and made remarks concerning the § 3553(a) factors. We therefore affirm as to this issue.

Next, Feigin argues that his sentence is procedurally unreasonable because the district court failed to provide sufficient reasons for imposing a thirty-month sentence, which was almost two times as great as the high end of the guideline range. Relying on language in 18 U.S.C. § 3553(c), Feigin notes that the court was required to provide reasons for the variance in open court and that post-sentencing rationales were not adequate. He argues that the impact of his crime on the individual and society already were factored into the guidelines, and that the court's "cryptic" comment that his crime "just kep[t] on giving" was not a factor that the court could consider under § 3553(a). Appellant's Brief at 33-34. Feigin next argues that his above-guidelines sentence is substantively unreasonable given

13

his lack of criminal history, his acceptance of responsibility, his otherwise exemplary record as a productive member of society, the lack of societal purpose that a long punishment served, and the fact that his offense was a "non-violent computer crime." Appellant's Brief at 34-35, 38. He submits that the court's focus on a single factor — the harm to the victim — supports that his sentence was unreasonable.

In reply to the government's waiver argument, Feigin argues that he did not waive any claim of procedural error, as the caselaw relied on by the government involved situations where defendants expressly withdrew objections, which did not occur in his case. He argues that he sufficiently objected to preserve the issue, but that, in any event, plain-error review would apply. He notes that the government did not address the merits of his procedural reasonableness claim, and argues that the court's failure to articulate its reasons for a variance was plain error.

We review the final sentence imposed by the district court for reasonableness. United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765 (2005). Whether inside or outside of the guidelines, we review a sentence for reasonableness under an abuse-of-discretion standard. Gall v.United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). This review is deferential, and the appellant bears the burden of establishing the absence of reasonableness in light of

14

the record and the § 3553(a) factors.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam), cert. denied, 129 S. Ct. 2848 (2009).

Review for reasonableness has two steps.  First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  Gall, 552 U.S. at 51, 128 S. Ct. at 597; United States v. Livesay, 525 F.3d 1081, 1093-94 (11th Cir. 2008) (holding that the district court committed procedural error by failing to provide any reasoning or any indication of what facts it relied on to justify a significant variance from the guidelines range).  Second, we must determine whether the sentence imposed is substantively reasonable based on the factors in § 3553(a).  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  Gall instructs that the district court "must make an individualized assessment based on the facts presented."  Id. at 50, 128 S. Ct. at 597.  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quotation marks and citation omitted).

15

Extraordinary circumstances are not required to justify a sentence outside the Guidelines range. Gall, 552 U.S. at 47, 128 S.Ct. at 595. However, if the district court decides that a sentence outside of the Guidelines range is warranted, the district court is required to state its reasons for such a variance to allow for meaningful appellate review. See id. at 50, 128 S. Ct. at 597; see also 18 U.S.C. § 3553(c) (providing that a district court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence"). If the court imposes a variance, it must "ensure that the justification is sufficiently compelling to support the degree of the variance," and a major variance "should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50, 128 S. Ct. at 597.

A district court must impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in § 3553(a)(2), namely, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes by the defendant, and provide the defendant with appropriate correctional treatment or medical care. See 18 U.S.C. § 3553(a)(2). The court must also consider other factors in § 3553(a), as set out above. While a district court need not state on the record that it has explicitly considered each § 3553(a) factor and need not discuss

16

each factor, United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005), "the sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority," United States v. Agbai, 497 F.3d 1226, 1230 (11th Cir. 2007) (per curiam) (quotation marks, alteration, and citation omitted). We will vacate a sentence only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks and citation omitted). The fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." Gall, 552 U.S. at 51, 128 S. Ct. at 597. "[A] district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence." Pugh, 515 F.3d at 1191. When considering whether a defendant's sentence is reasonable, we have compared the sentence actually imposed to the statutory maximum. See, e.g., United States v. Valnor, 451 F.3d 744, 751-52 (11th Cir. 2006).

Here, Feigin has not demonstrated that his sentence was procedurally unreasonable. There is no dispute that the court properly calculated the guideline

17

range of ten to sixteen months pf imprisonment, took into account the parties' arguments, and treated the guidelines as advisory. See Gall, 552 U.S. at 51, 128 S. Ct. at 597. Based on the victim's testimony, the court stated, in open court, that it had a better understanding of the damage and harm that Feigin's actions caused, which the court described as a harm that "just kep[t] on giving." R4 at 18-19. Moreover, the court stated that the harm to Garcia was not accounted for adequately by the guidelines, indicating that a sentence in the guideline range would be insufficient under the § 3553(a) factors. Id.; cf. Livesay, 525 F.3d at 1093. Although the reasons for the above-guideline sentence given by the court are brief, they are nonetheless sufficient for adequate appellate review, given that the court explained the grounds on which it relied to justify the variance. See Gall, 552 U.S. at 50-51, 128 S. Ct. at 597; Livesay, 525 F.3d at 1093. Therefore, the district court did not commit a procedural error in sentencing Feigin.

Feigin also has failed to demonstrate that his sentence is substantively unreasonable. Evidence showed that Feigin's conduct, while having a financial aspect, was a deliberate invasion of privacy that had a lasting impact on the victim. Specifically, the victim testified that over 10,000 pictures were taken of her, some of her without clothing on, and that Feigin posted a video with images of her on the internet for countless viewers to see. Based on the internet postings, she received

18

unsolicited and distasteful messages, and suffered emotional and psychological harm as a result. Feigin's thirty-month sentence reflected the seriousness of the offense, as shown by the harm to the victim, and was reasonably designed to insure adequate deterrence for others who might contemplate similar criminal conduct. See 18 U.S.C. § 3553(a)(2)(A), (B). Lastly, Feigin's thirty-month sentence is significantly lower than the statutory maximum sixty-month term under 18 U.S.C. § 1030(a)(2) and (c)(2)(B)(ii). See Valnor, 451 F.3d at 751-52; see also Gonzalez, 550 F.3d at 1321, 1324 (holding that a fifty-month sentence was reasonable in light of a ten-year statutory maximum). Given the deference accorded to the district court, we hold that Feigin's thirty-month sentence was reasonable. See Pugh, 515 F.3d at 1191.

## III. CONCLUSION

Feigin appeals his thirty-month sentence for accessing a computer without authorization and obtaining information from a protected computer. Because we find that the government's comments at sentencing did not violate the plea agreement and because the sentence imposed was reasonable, we **AFFIRM.**